UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

BRIDGE ASSOCIATES OF SOHO, INC.,

                        Debtor.
------------------------------------------------------------------x

Case No. 818-71159-reg

Chapter 11

## MEMORANDUM DECISION AND ORDER

Before the Court is the Debtor's motion to sell an occupied residential loft building located in the SOHO district of New York City free and clear of liens claims and encumbrances including any rights of existing occupants pursuant to 11 U.S.C. § 363(b) and (f).  [ECF No. 34] The Debtor's motion which requires an analysis of the New York Multiple Dwelling law, the Loft Law and the applicable bankruptcy statutes presents the Court with an issue of first impression.

The Debtor is the owner of real property located at 99 Vandam Street a/ka 533 Greenwich Street, New York (the "Building" or the "Property") which has been designated an "interim multiple dwelling" or "IMD" under Article 7-C of the New York Multiple Dwelling Law.  *See* N.Y. Mult. Dwell. Law, Art. 7-C,  §§280-287 (the "Loft Law").  The Debtor seeks to sell the Property free and clear of any liens, claims and encumbrances, including any possessory rights that may be  held by the current occupants of the Building.  The Building's occupants ("Statutory Tenants") object. [ECF Nos. 41, 47, 49]  The Statutory Tenants  argue that they have possessory rights under the Loft Law which cannot be altered  by a § 363 sale.  The New York City Loft Board also objects to the sale arguing that the Debtor should not be permitted to use the Bankruptcy Code to strip the Property of otherwise valid and controlling statutory regulations.  [ECF Nos. 42, 50]   Finally, the Debtor's senior secured creditors, tax lien holders,

object to the sale and seek relief from stay in order to complete a foreclosure sale of the Property which was stayed by the Debtor's bankruptcy filing on the eve of foreclosure. [ECF Nos. 38, 40]

The Debtor proposes to conduct an auction sale of the Property with a reserve price of $12.5 million which, according to the Debtor, will be sufficient to ensure payment of secured claims thus satisfying § 363(f)(3) as to the secured creditors. As for the Statutory Tenants, according to the Debtor applicable nonbankruptcy law permits the sale of the Property free and clear of their interests, and/or such a sale is permissible because the Statutory Tenants' interests are subject to bona fide dispute. See 11 U.S.C. § 363(f)(1) and (4). The Debtor argues that the Statutory Tenants have no possessory interest in the Property, and are merely holdover tenants who have not paid rent in decades and are subject to eviction under state law.

The Loft Law was enacted in 1982 to address illegal conversions of a large number of buildings within New York City that wanted to transition from commercial to residential use. *See* N.Y. Mult. Dwell. Law § 280. The Laws were enacted order to bring these buildings into conformity with governing statutory, regulatory and/or code requirements for residential occupancy, protect tenants in those buildings and protect public health, safety and general welfare. The findings of the New York state legislature are as follows:

> The legislature hereby finds and declares that a serious public emergency exists in the housing of a considerable number of persons in cities having a population of over one million, which emergency has been created by the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance with applicable building codes and laws and without compliance with local laws regarding minimum housing maintenance standards; that many such buildings do not conform to minimum standards for health, safety and fire protection; that housing maintenance services essential to maintain health, safety and fire protection are not being provided in many such buildings; that as a consequence of the acute shortage of housing as found and declared in

2

the emergency tenant protection act of nineteen seventy-four the tenants in such buildings would suffer great hardship if forced to relocate; that as a result of the uncertain status of the tenancy in question the courts have been increasingly burdened with disputes between landlords and tenants regarding their respective rights and obligations under the existing circumstances; that some courts have declared such buildings "de facto" multiple dwellings; that illegal and unregulated residential conversions undermine the integrity of the local zoning resolution and threaten loss of jobs and industry; that the intervention of the state and local governments is necessary to effectuate legalization, consistent with the local zoning resolution, of the present illegal living arrangements in such "de facto" multiple dwellings, and to establish a system whereby residential rentals can be reasonably adjusted so that residential tenants can assist in paying the cost of such legalization without being forced to relocate; that in order to prevent uncertainty, hardship, and dislocation, the provisions of this article are necessary and designed to protect the public health, safety and general welfare.

N.Y. Mult. Dwell. Law § 280.

The Debtor's Property has been subject to coverage under the Loft Law since approximately 1991 when prior owners of the Building conceded coverage as an "interim multiple dwelling" or "IMD" and formally registered the Building with the "Loft Board" in 1993.[1] The Debtor acquired the Property in 2002, subject to the rules and regulations of the Loft Law.

All parties agree that the Building does not have, and never has had, a certificate of occupancy for residential use, nor is the Debtor currently in compliance with the process to bring the Building into compliance. Pursuant to §§ 301 and 302 of the Multiple Dwelling Law, if a building is occupied without a certificate of occupancy, no rent may be collected. In recognition of the process needed to convert IMD's to legal multiple dwellings, the Loft Law

---

[1]    The Loft Board was established pursuant to Multiple Dwelling Law § 282 to, among other things, "resolve complaints of owners of interim multiple dwellings and of residential occupants of such buildings ... and to act upon hardship applications . . ." N.Y. Mult. Dwell Law § 282.

allows an owner to collect rent even if there is no certificate of occupancy, ***as long as*** it is in compliance with the rules and regulations of the Loft Law necessary to move the Building towards legalization.  N.Y. Mult. Dwell. Law § 285.  If the owner is not in compliance then it may not collect rent.  The laws were necessitated because  building owners permitted people to occupy units that failed to meet basic health and safety requirements.

The Debtor argues that absent the payment of rent, the Statutory Tenants have no possessory rights to occupy the premises.  In response, the Statutory Tenants cite to § 286 of the Multiple Dwelling Law which provides that:

> Prior to compliance with safety and fire protection standards of article seven-B of this chapter, residential occupants qualified for protection pursuant to this article shall be entitled to ***continued occupancy provided that the unit is their primary residence, and shall pay the same rent, including escalations, specified in their lease or rental agreement to the extent to which such lease or rental agreement remains in effect*** or, in the absence of a lease or other rental agreement in effect, rent adjustments prior to article seven-B compliance shall be in conformity with guidelines to be set by the loft board for such residential occupants within six months from the effective date of this article.

N.Y. Mult. Dwell. Law § 286(2)(i) (emphasis added).

The Debtor and the Statutory Tenants disagree on the construction of this statute.  The Statutory Tenants argue that their continued occupancy rights are conditioned only upon the requirement that the unit they occupy be their primary residence.  The Debtor argues that any occupancy rights conferred by this statute are conditioned upon both the primary residence requirement ***and*** upon the payment of rent.  The Court agrees with the Statutory Tenants.  The comma inserted before the phrase "and shall pay the same rent", in this Court's view, distinguishes the reference to rent from the residency requirement.  The discussion of rent in § 286 addresses what rents an owner may collect assuming the owner is permitted to collect rent.

4

This conclusion is supported by the decision of the New York Court of Appeals in *Chazon LLC v. Maugenest*, 19 N.Y.3d 410 (2012). In that decision, the Court found that statutory tenants under the Loft Law could not be evicted based on non-payment of rent where the owner was not in compliance with the Loft Laws and had not received an extension of time to come into compliance. Under these facts, identical to those presented to the Court today, the Court found that "Multiple Dwelling Law §302(1)(b) bars not only an action to recover rent, but also an 'action or special proceeding . . . for possession of said premises for nonpayment of such rent." *Id.* at 416; *see also 902 Associates Ltd. v Total Picture Creative Services, Inc.*, 547 N.Y.S.2d 978, 979 (N.Y. App Div. 1st Dept. 1989) ("While the owner of an interim multiple dwelling may recover rent from residential loft occupants notwithstanding the rent-forfeiture provisions of the Multiple Dwelling Law applicable to owners of dwellings occupied without a certificate of occupancy, this right is contingent upon the loft building owner's "compliance" with Multiple Dwelling Law section 284 . . ..").  That holding negates the Debtor's argument that the Statutory Tenants' occupancy rights are conditioned upon the payment of rent, and supports the Statutory Tenants' position that the Debtor is not entitled to collect rent or recover possession for nonpayment thereof unless the owner is in compliance with the Loft Law.  To borrow the words of the New York Court of Appeals, "if [this] is an undesirable result, the problem is one to be addressed by the Legislature." *Maugenest*, 19 N.Y.3d at 416.

The Debtor also argues that the Statutory Tenants are subject to eviction as holdover tenants. *See Czerwinski v. Hayes*, 799 N.Y.S.2d 349 (N.Y. App. Div. 2d Dept. 2005) (failure to comply with multiple dwelling pleading requirements does not pose a bar to landlord holdover summary proceedings).  The Court declines to adopt the Debtor's argument.  A holdover tenant

is one who remains in the premises without any vested right to remain there.  *Koylum, Inc. v. Peksen Realty Corp.*, 272 F.3d 138, 141 (2d Cir. 2001) (citations omitted).  As previously discussed, § 286(2) of the Multiple Dwelling Law gives the Statutory Tenants rights to remain at the Property as long as it is their primary residence.[2]  Holdover status is not appropriately conferred upon tenants who occupy the premises under rights conferred upon them by statute.  Caselaw also supports the Court's conclusion that the Statutory Tenants are not subject to eviction as holdover tenants.  *See 873 Broadway Assocs. v. Bronfman*, 1991 N.Y. App. Div. LEXIS 18133 (App. Div. 1st Dept. 1991); *Mapama Corp. v Nadelson*, 129 Misc.2d 816, (Sup. Ct. 1981).

The Debtor further argues that notwithstanding the Loft Law and caselaw which prevent an out-of-compliance owner from collecting rent, or evicting based on nonpayment of rent, or evicting based on holdover status, a § 363(f) "free and clear" sale can be used to cut off the Statutory Tenants rights of possession because they have no "substantive right" to remain at the Property.  The Court disagrees and finds that the rights of possession conferred by § 286 of the Multiple Dwelling Law are rights that cannot be stripped without satisfaction of the requirements of § 363(f)(1) or (4).  The Debtor has failed to show the Court that applicable non-bankruptcy law would allow the sale of the Property free and clear of the Statutory Tenants' interests, and has failed to present arguments here which would rise to the level of a "bona fide" dispute as to the Statutory Tenants' rights under the Loft Law.

---

[2]  *Cf.* 29 RCNY §2.08.1 (Eviction of Residential Occupants) (grounds for eviction include: (1) that the unit is not the primary residence, or (2) that the residential occupant is committing or permitting a nuisance, or damaging the building, or interfering with the safety of the landlord, other occupants of the building or adjacent buildings, or (3) any other grounds for eviction specified in the Real Property Law or Real Property Actions and Proceedings Law to the extent not inconsistent with the Loft Law).

Finally, in its most recent submission to the Court, the Debtor argues that the Statutory Tenants could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interests and as such a sale free and clear of their tenancies is permitted.  11 U.S.C. § 363(f)(5).  This last minute argument is premised § 286(12) of the Multiple Dwelling Law which allows "an owner and a residential occupant [to] agree to the purchase by the owner of such person's rights in a unit." N.Y. Mult. Dwell. Law §286(12).  This section was cited by the Loft Board in support of its position that the Statutory Tenants have protected property interests in their respective units. [ECF No. 50]  However, § 286(12) does not state that the Statutory Tenants can be *compelled* to accept a monetary settlement of their interests, nor does the Debtor cite any case interpreting § 286(12) as requiring the Statutory Tenants to accept a money satisfaction of their interests.  Moreover, the Debtor is not offering a money satisfaction to the Statutory Tenants as part of the free and clear sale.  So, the Debtor's reliance on § 286(12) is without effect.

Although the Debtor's attempt to cut off the Statutory Tenants' rights under the Loft Law by way of a § 363(f) sale appears to be an issue of first impression, to the extent that cases involving rent-controlled apartments are analogous, the Court will note that attempts have been made to use the Bankruptcy Code to trump state housing laws and they have failed. *See Friarton Estates Corp v. City of New York (In re Friarton Estates Corp.)*, 65 B.R. 586, 593-94 (Bankr. S.D.N.Y. 1986) ("The circumstance of ownership of buildings subject to rent control, which this debtor voluntarily assumed, may not be mitigated by the bankruptcy laws."), and *Santiago-Monteverde v. Pereira (In re Santiago-Monteverde)*, 24 N.Y.3d 283 (N.Y. 2014) (answering question certified by Second Circuit Court of Appeals), 780 F.3d 126 (2d Cir. 2015)

(following decision on certified question, upholding exemption and preventing sale of debtor's interest in rent-stabilized lease).

Based on the foregoing, the Court finds that the Statutory Tenants have possessory rights granted to them under the Loft Law which the Debtor cannot disturb under § 363 of the Bankruptcy Code.  The Debtor's motion [ECF No. 34] is therefore denied.

So ordered.



**Dated: Central Islip, New York**
**July 2, 2018**

8

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**